## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**
**Vs.**                                    **CASE NO.:  21-CR-524**
**NICHOLAS BROCKHOFF,**
         **Defendant.**
_____/

## <u>DEFENDANT'S REQUEST FOR PRETRIAL RELEASE AND FOR IMMEDIATE RELEASE WITH CONDITIONS</u>

COMES NOW, the Defendant, NICHOLAS BROCKHOFF, by his attorney, ALEX R. STAVROU, ESQUIRE, and respectfully moves this Honorable Court to vacate Magistrate Judge Jon York's detention order pursuant to 18 U.S.C. 3142(f) and order him released from custody pursuant to the Bail Reform Act and the Fifth Amendment's Due Process Clause.  Supreme Court precedent makes it unconstitutional for a Court to hold a detention hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. 3142(f).  Numerous Courts have addressed the issue, and the facts remain, Mr. Nicholas Brockhoff is not a danger to any "person, nor the community" as required by statute.  The Government has not, and cannot present sufficient evidence that Nicholas Brockhoff poses a flight risk, nor that he is a danger to any member of the public or community.  Accordingly, Nicholas Brockhoff must be released on bond immediately with appropriate conditions of release. See 18 U.S.C. 3142(a)-(c).  This appeal arises under 18 U.S.C. 3145(b), which provides for de novo review of a magistrate judge's detention order.  In support of this appeal, NICHOLAS BROCKHOFF states as follows:

### I.    PROCEDURAL HISTORY

On or about May 27, 2021, Nicholas Brockhoff was arrested on a complaint

which alleges Mr. Brockhoff "assaulted capitol police officers" by utilizing a fire

extinguisher and discharging its contents onto capitol police, causing the "dispersing of

law enforcement officers and impeded law enforcement officers from performing

official duties." The complaint further alleges Mr. Brockhoff entered the Capitol through

a broken window…" Mr. Brockhoff is alleged to have possessed a "stolen MPD

helmet." Further image analysis alleges Mr. Brockhoff may have worn the helmet, and

in images unclear, Mr. Brockhoff may have entered into a Republican Conference Room.

On June 3, 2021, Nicholas Brockhoff had a detention hearing. The Government

requested detention. On June 3, 2021, Magistrate Judge York detained Mr. Brockhoff

under 18 U.S.C. 3142(f), finding that:

> "No condition or combination of conditions of release will reasonably assure the
> safety of any other person and the community."

This Motion follows.


## II.    LEGAL STANDARD

The procedures and standards governing pretrial detention in federal court were

modified substantially in 1984 with the Bail Reform Act of 1984 (18 U.S.C. § 3142). The

modification was made to give courts adequate authority to make pre-trial decisions that

consider the dangers of an individual's release in lieu of pretrial detention. The Supreme

Court has limited the circumstances in which pre-trial detention can be sought by the

government to some of the most serious federal criminal offenses.

The Bail Reform Act presumes federal criminal defendants should be released

pending trial or sentencing in their case, unless narrowly drawn categories of potential

pre-trial detainees. However, the presumption of release pretrial still allows for strict

conditions of pretrial release to ensure the safety of the community and the defendant's return to court. The language of the act itself gives preference to pretrial release for federal criminal defendants.

As stated previously, the Bail Reform Act sets careful boundaries, in which pretrial Detention may be ordered. It is widely accepted that only six circumstances exist that permit a court to even hold a pretrial detention hearing, let alone place a federal criminal defendant into pretrial detention:

1. Cases with a maximum sentence of life imprisonment or death;
2. Cases involving federal violent crime;
3. Cases involving serious drug offenses, i.e., 10 years or more in federal prison;
4. Defendants considered recidivist offenders, i.e., two or more relevant felony convictions involving violence or drug offenses
5. Defendant poses a serious risk of flight, not returning to court;
6. Defendant poses a serious risk of obstructing justice.

It should be noted, while there may be widespread agreement as to whether the offense(s) charged were a "crime of violence," and certainly mitigated by the fact Mr. Brockhoff's alleged offenses did not cause physical harm nor injury to the alleged victims, Mr. Brockhoff was detained because the Court found specifically, No condition or combination of conditions of release will reasonably assure the safety of any other person and the community.  It is this provision Mr. Brockhoff seeks to rebut.

The default position of the law is that the Defendant should be released pending trial. 18 U.S.C. 3142(e).  Even if the government is entitled to a detention hearing, it has failed to prove, by clear and convincing evidence, that Mr. Brockhoff poses an articulable threat to an individual or the community.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) ("The default position

of the law . . . is that a defendant should be released pending trial." (internal quotation marks and citation omitted)); *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) ("[F]ederal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. Only in rare circumstances should release be denied. Doubts regarding the propriety of release should be resolved in favor of the defendant." (internal citations omitted)).

The Bail Reform Act of 1984 authorizes one of those carefully limited exceptions. Relevant here, the government may seek a defendant's pretrial detention if it has charged an offense falling within one of five enumerated categories. *See* Mem. Op., *United States v. Chansley*, No. 21-cr-00003-RCL, at 8 (D.D.C. March 8, 2021) (quoting 18 U.S.C. § 3142(f)(1)). Assuming the court finds that the defendant has been charged with such an offense, the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

The crux of the constitutional justification for preventative detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat." *Munchel*, 2021 U.S. App. LEXIS 8810, at *16 (*quoting Salerno*, 481 U.S. App. LEXIS 8810, at *13 (D.C. Cir. March 26, 2021) (emphasis added) (*quoting Salerno*, 481 U.S. at 751). "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at *19, and "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history,

4

characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at *13.

Then, only after the government has met its burden of proving a specific articulable threat to an individual or the community, the government must establish, again by clear and convincing evidence, "that *no* condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the *only* means by which the safety of the community can reasonably be assured. *See United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

Under 18 U.S.C. § 3145(b), a defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "a court having original jurisdiction over the offense." This court has previously held that a magistrate judge's detention order is subject to *de novo* review by the district court. *See United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C 2018).

### III. THE BAIL REFORM ACT DOES NOT AUTHORIZE MR. BROCKHOFF'S PRETRIAL DETENTION.

The government has failed to prove, by clear and convincing evidence, that Mr. Brockhoff poses a dangerous threat to his community. And even if the government has met its burden, it has nevertheless failed to demonstrate, again by clear and convincing evidence, that no condition, or combination of conditions, could reasonably assure the safety of the community.

### A. The Government Has Failed to Establish Any Articulable Threat Posed by Mr. Brockhoff to an Individual or the Community.

Even if the government is entitled to a detention hearing, it has failed to prove, by clear and convincing evidence, that Mr. Brockhoff poses an articulable threat to an individual or the community. The crux of the constitutional justification for preventative detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an

individual or the community, . . . a court may disable the arrestee from executing that threat." *Munchel*, 2021 U.S. App. LEXIS 8810, at *16 (*quoting Salerno*, 481 U.S. at 751). "Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community," *id.* at 16-17, and "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Id.* at 11.

In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

Additionally, "[d]etention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *Munchel*, at 17. Rather, the government must "clearly identif[y]" an "articulable threat." *Id.* "Thus, a defendant's detention based on dangerous accords with due process *only insofar* as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses *a concrete, prospective threat to public safety.*" *Id.* at 11. This holding of the D.C. Circuit is consistent with the Supreme Court's acknowledgement in *Salerno* that while constitutional on its face, the Bail Reform Act could nevertheless be unconstitutionally applied. *Salerno*, 481 U.S. at 745 n.3. Mr. Brockhoff's detention in this case is exactly the unconstitutional application of the Bail Reform Act contemplated by the Court in *Salerno*. Where, as here, a defendant is detained based solely on the conduct they are

alleged to have committed (and absent a charge giving rise to a presumption of
detention), the failure of the government to "clearly articulate" a future threat to an
individual or the community constitutes a deprivation of that defendant's due process
rights under the Fifth Amendment of the Constitution. *See, e.g., Motamedi*, 767 F.2d at
1405 (The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without
due process and of excessive bail require careful review of pretrial detention orders to
ensure that the statutory mandate has been respected.").

### i. Nature and Circumstances of the Charged Offenses

Judge Howell has delineated several factors that she has considered in evaluating
the nature and circumstances of charged offenses as part of the government's request for
detention in Capitol violence cases. *See* Mem. Op., *United States v. Chrestman*, No. 1:21-
cr-00160-TJK, at 14-16 (D.D.C. Feb. 26, 2021). The "differentiating factor[s]" include:

(1) "whether a defendant has been charged with felony or misdemeanor offenses;" (2)

(2) "any indication that a defendant engaged in prior planning before arriving at the
Capitol;"

(3) whether a defendant is alleged to have been equipped with a dangerous weapon
"indicat[ing] at least some degree of preparation for the attack and an expectation
that the need to engage in violence against law enforcement or, indeed, the
Legislative branch, might arise;"

(4) "[e]vidence of coordination with other participants before, during, or after the
riot";

(5) evidence that a "defendant . . . assumed either a formal or a de facto leadership
role;"

(6) "a defendant's words and movements during the riot" including, but not limited
to, whether a defendant

(i) "injured, attempted to injure, or threatened to injure others;"
(ii) "actively threatened or confronted federal officials or law enforcement;"
and/or

(iii) "promoted or celebrated efforts to disrupt the certification of the electoral
vote count during the riot, thereby encouraging others to engage in such conduct."
*Id.*

It is axiomatic that the Bail Reform Act does not contemplate detention based purely on

the nature of pending charges alone: to do so would unconstitutionally controvert one's presumption of innocence by requiring detention based solely on the allegations giving rise to the need for a detention hearing and not the facts *and circumstances* requiring contemplation by the plain language of the statute itself. *See, e.g.,* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

Nevertheless, Judge Howell's delineation of factors, while not binding on this court's determination, do reflect her participation in a number of detention hearings relating to the violence at the Capitol on January 6. And with respect to Mr. Brockhoff, the government has not proffered any evidence, let alone admissible evidence, that he "engaged in prior planning before arriving at the Capitol" or "coordin[ated] with other participants before, during or after the riot;" that he brought a dangerous weapon with him to the Capitol evincing "some degree of preparation for the attack and an expectation that the need to engage in violence against law enforcement;" or that he ever entered the Capitol or was otherwise present at the events of January 6, except for the brief period of time described by the government in their Complaint.

And while Mr. Brockhoff may be charged with a felony or felonies, this one factor cannot and should not alone warrant his detention pending trial. Moreover, although the government alleges Mr. Brockhoff was "calling back to the crowd behind him," the government does not allege that the person depicted in the video in any way commanded authority or otherwise served in any leadership role. The shouts of many can be heard during the events of January 6 and while condemnable, in the words of Judge Howell herself, "not all rioters charged with offenses stemming from the January 6 attack will be held pending trial." Mem. Op., *United States v. Chrestman*, No. 1:21-cr-00160-TJK, at 13 (D.D.C. Feb. 26, 2021).

This Court should note, any attempt by the Government to indicate Mr. Brockhoff is alleged to have "injured, attempted to injure, or threaten to injure others" or that he is

alleged to have "actively threatened or confronted federal officials or law enforcement" would be nonsense since the discharge from the fire extinguisher is non-toxic and, by its very design, designed to be non-toxic and designed not to cause injury. And the government has not proffered any evidence of Mr. Brockhoff having "promoted or celebrated efforts to disrupt the certification of the electoral vote count."[12] Mem. Op., *United States v. Chrestman*, No. 1:21-cr- 00160-TJK, at 15 (D.D.C. Feb. 26, 2021).

### ii. The Purported Weight of the Evidence.

In determining whether conditions of release can assure the safety of others, "[t]he weight of the evidence is the least important of the factors and the bail statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121-22 (9th Cir. 1991) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)); *see also Motamedi*, 767 F.2d at 1408 ("It is apparent from the record below that the district court accorded great weight to the charges against [the defendant] and the Government's's assertions of his guilt."). "[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Motamedi*, 767 F.2d at 1408. "It is not the purpose of the bail system to punish an accused again for his past crimes, *or to punish him in advance for crimes he has not yet been shown to have committed*." *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969) (emphasis added).

> It is true of course, that [the predecessor to the current Bail Reform Act] requires the court to take into account 'the nature and circumstances of the offense charge [and] the weight of the evidence against the accused,' but the statute neither requires nor permits a pretrial determination that the defendant is guilty. This is not merely a matter of the proprieties, though that is itself not unimportant for judicial actions. If one bears in mind that one is examining only the evidence against the accused, for purposes of considering prospect of flight[,] [then, the only basis for detention], one is more likely to guard against the impermissible course of reaching some kind of partial determination of guild and beginning what is in substance a mandate of punishment.

*Alston*, 420 F.2d at 179-180. In this case, the only party in possession of any "evidence" is the government. Admittedly, Mr. Brockhoff has been formally charged, but

he has yet to receive any evidentiary disclosure [which substantiates what is alleged in the Statement of Facts] other than what's been alleged in the Statement of Fact filed May 27, 2021.

### iii. History and Characteristics of the Defendant

In considering Mr. Brockhoff's history and characteristics, the Court must "take into account the available information concerning" Brockhoff's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

18 U.S.C. § 3142(g)(3)(A).

Specifically, Mr. Brockhoff has strong ties to the area in which he resides. Mr. Brockhoff is 21 years of age. Mr. Brockhoff was born and raised in Covington, Kentucky, and was residing in his childhood home when law enforcement sought him for arrest. Mr. Brockhoff has resided in that residence for the last sixteen years. Mr. Brockhoff lived at the residence with his brother and Father. Mr. Brockhoff's mother also resides in Covington, Kentucky. Mr. Brockhoff was gainfully employed. Mr. Brockhoff's education is high school graduate with one completed semester of college. Mr. Brockhoff has no history of drug abuse or alcohol abuse.

Mr. Brockhoff is not alleged to be a part of any group, militia, or to have acted in planned concert with any other individuals.

Mr. Brockhoff has limited financial means, and any monies he would have had would be from employment. This Court should note, his mother and father are property owners and would utilize their residence(s) for conditions of release. Mr. Brockhoff has no hidden assets or anything of value that could aid him in flight should he fail to appear.

Mr. Brockhoff has no prior criminal history, and prior to this arrest, had never had contact with law enforcement, and therefore, Mr. Brockhoff, having no prior criminal

history, was not on probation nor parole, and was not on release pending appeal, nor
sentencing.

### iv.    Mr. Brockhoff is Not a Flight Risk

Mr. Brockhoff took no steps in avoiding apprehension, and aided law
enforcement in providing his location so as to be arrested.  On the morning of Mr.
Brockhoff's arrest, Mr. Brockhoff was at a campground near the Memphis, Tennessee
area.  Law enforcement arrived at the Brockhoff residence in Covington, Kentucky,
to serve a search warrant and an arrest warrant.  Mr. Brockhoff was advised by his
brother that law enforcement were seeking him.

Additionally, Mr. Brockhoff was contacted by his mother who advised he was
being sought by law enforcement.  Mr. Brockhoff's mother attempted to secure counsel
first, while Mr. Brockhoff made contact directly with the Federal agents.  This contact
included Mr. Brockhoff utilizing his phone to "share his location" with his neighbor, who
in turn, provided the Federal Agents his location.  Sharing his location meant the Mr.
Brockhoff utilized his phones GPS services to advise the Federal Agents of his exact
location.  Mr. Brockhoff's phone records are replete with contacts with federal agents.
See attached As Exhibit "A."

Based on Mr. Brockhoff's sharing of his location, local law enforcement were
dispatched to the provided location, and within [approximately] six hours of law
enforcements first contact with the Brockhoff residence, Mr. Brockhoff was in custody.

### v. Danger to the Community

The final factor that the Court must consider is "the nature and seriousness of the
danger to any person or the community that would be posed by the defendant's release."
18 U.S.C. § 3142(g). "Consideration of this factor encompasses much of the analysis set
forth above, but it is broader in scope," requiring an "open-ended assessment of the
'seriousness' of the risk to public safety." *Taylor*, 289 F. Supp. 3d at 70. Because this
factor substantially overlaps with the ultimate question of whether any conditions of

release "will reasonably assure . . . the safety of any other person and the community," 18

U.S.C. § 3142(e), it should bear heavily on the Court's analysis. *See* Memorandum

Opinion and Order, *United States v. Cua*, No. 21-107 (RDM) (March 10, 2021).

The government bears the ultimate burden of establishing that no condition or

combination of conditions is sufficient to negate the risk of the accused's dangerousness

by clear and convincing evidence. 18 U.S.C. § 3142(e)(1); *see also United States v. Bell*,

209 F. Supp. 3d 275, 277 (D.D.C. 2016) (*citing United States v. Simpkins*, 826 F.2d 94,

96 (D.C. Cir. 1987)). Clear and convincing evidence means proof that the defendant

actually poses a danger to the community, not that a defendant "in theory" poses a

danger. *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). Only when there is a

"strong probability that a person will commit additional crimes if released" is the

community interest in safety sufficiently compelling to overcome the criminal

defendant's right to liberty. *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988).

In passing the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, Congress hoped

to "give the courts adequate authority to make release decisions that give appropriate

recognition to the danger *a person* may pose to others if released." S. Rep. No. 98-225, at

3.

> The reference to safety of any person is intended to cover the situation in which
> the safety of a particular identifiable individual, perhaps a victim or witness, is of
> concern, while the language referring to the safety of the community refers to the
> danger that the defendant might engage in criminal activity to the detriment of the
> community.

S.Rep. No.98-225 at 12–13, reprinted in 1984 U.S. Code Cong. & Adm. News 3182,

3195–3196, *quoted in* 3B Wright & Miller, Fed. Prac. & Proc. § 766 (4th ed.).

To that end, in *United States* v. *Salerno*, 481 U.S. 739 (1987), the Supreme Court

held that "the mere fact that a person is detained does not inexorably lead to the

conclusion that the government has imposed punishment" and that a valid regulatory

purpose of pretrial detention is to "give the courts adequate authority to make release

decisions that give appropriate recognition to the danger a person may pose to others if

released." *Id.* at 742 (quotation omitted). Yet, the Court explicitly acknowledged the possibility of the Bail Reform Act *being applied* in a manner constituting an unconstitutional violation of an accused's due process rights ensured by the Fifth Amendment. *See id.* at 745 n.3.

In that vein, the D.C. Circuit has now explicitly articulated the unique confluence of events that gave rise to the violence at the Capitol on January 6 and has admonished this court for:

> Fail[ing] to demonstrate that it considered the specific circumstances that made it possible, on January 6, for [those gathered] to threaten the peaceful transfer of power. [Those gathered] had a unique opportunity to obstruct democracy on January 6 because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests. Thus, [participants in the violence at the Capitol] were able to attempt to obstruct the electoral college vote by entering the Capitol together with a large group of people who had gathered at the Capitol in protest that day. . . . [T]he presence of the group was critical to [the] ability to obstruct the vote and to cause danger to the community.

*Id.* at 19-20. The D.C. Circuit went on to note that although the district court concluded the defendants there were "a danger to 'act against Congress' in the future," it failed to "explain[] how the [defendants] would be capable of doing so now that the specific circumstances of January 6 have passed." *Id.* at 19-20.

In ordering Mr. Brockhoff detained pending trial, the magistrate judge concluded: the sole grounds upon which the Court relied in concluding Mr. Brockhoff presents "an identified and articulable threat to an individual or the community" is the fact that he is alleged to have participated in the events of January 6.

In so doing, the court shifted "the Government's burden to prove to the judicial officer by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure the safety of any person and the community." *United States v. Watkins*, 940 F.3d 152, 159 (2d Cir. 2019). Absent an "articulable threat" of future acts against Congress by Mr. Brockhoff now that the specific circumstances of January 6 have passed, the government has failed to meet its burden, by clear and convincing evidence, that Mr. Brockhoff poses a danger to any individual or to the community and his

detention is permitted neither by the Bail Reform Act, nor the due process clause of the Fifth Amendment to the Constitution.

Absent any specifically articulable threat posed by Mr. Brockhoff to his community pretrial detention is unwarranted. Indeed, notably absent from the detention order is any reference to the fact that the government does not allege that Mr. Brockhoff made any attempt to flee, but rather between January 7 and his arrest evidently lived his life normally – including working or seeking work and otherwise living his life normally. The only reasonable inference to be drawn from the court's detention order is that to be released, Mr. Brockhoff would have had to prove that he did not participate in the conduct he is now merely alleged to have committed.

### B.   Conditions of Release Ensure that the Public's Safety Can be Reasonably Assured.

Even were this court to conclude that Mr. Brockhoff presents an articulable threat to an individual or the community, it must nevertheless assess whether "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The condition or combination of conditions need not guarantee the safety of the community, to so require would "fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) (internal citation omitted). Rather, courts cannot demand more than an "objectively reasonable assurance of community safety." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985), *quoted in Tortora*, 922 F.2d at 884.

Because the government has yet to articulate a specific threat to the community it is difficult, if not impossible, to understand how the panoply of release conditions, including GPS monitoring, available to the court would not assure the safety of the community.

Of course, this rationale – that he is a danger to the community and there are no conditions of release which can protect the community -- for detention has now been

rebuffed by the D.C. Circuit and, absent some specifically articulable threat posed by Mr. Brockhoff, it is axiomatic that the safety of the community can reasonably be assured despite Mr. Brockhoff's release.

Because there is no basis to detain Mr. Brockhoff, he should be released immediately under the following conditions:

A. A signature bond, a property bond in the amount of $25,000, or in the alternative, a surety bond;

B. A travel restriction to limit travel to the Eastern District of Kentucky, to the Middle District of Florida (to work/meet with his counsel); and to the D.C. Circuit;

C. Pretrial monitoring, to include monitoring for alcohol and drugs;

D. Submission of his passport;

E. Maintain full time employment and/or actively seek employment;

F. Restrictions on personal associations, place of abode, or travel such as electronic monitoring, GPS monitoring, home detention, or home incarceration. These conditions will "reasonably assure" Mr. Brockhoff's appearance and the safety of the community. § 3142(c).

**CONCLUSION**

For these reasons, Mr. Brockhoff respectfully asks this Court to vacate the

detention order and order him released on conditions this Court deems appropriate

under §§ 3142(a)–(c). Because the government has provided no permissible basis for

pretrial detention under § 3142(f), continuing to detain Mr. Brockhoff violates the law.

DATED: February 8, 2022

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

### Certificate of Service

I HEREBY CERTIFY, that a true and correct copy of the foregoing Notice of

Appearance was sent via ECM filing to the United States Attorney Office for the District

of Columbia, on this 8th day of February, 2022.

*ALEX R. STAVROU, ESQ.*
ALEX R. STAVROU, ESQUIRE
Alex R. Stavrou, P.A.
4908 Busch Blvd, Suite 204
Tampa, Florida 33617
Phone: 813-251-1289x1
Fax: 813-489-2528
Florida Bar No. 0108390
Alex@alexstavrou.com

# EXHIBIT "A"

...URT
...FOR THE
...T OF COLUMBIA

...444

...OND
...CON...

FBI
SPECIAL AGENT
BryoN
SPEAKES
330-714.6862

statute. ...
...s Brockhoff poses a flight risk, nor that he is a

Usage for:    8594140309

MESSAGING CHARGES

Total use:    21 messages

| Date | Time | Destination | Number | Direction | Type |
|---|---|---|---|---|---|
| 5/27/21 | 10:20 AM | COVINGTON | (859) 743-42 | Incoming | Text |
| 5/27/21 | 8:11 AM | COVINGTON | (859) 414-05 | Incoming | Text |
| 5/27/21 | 8:11 AM | COVINGTON | (859) 414-05 | Incoming | Text |
| 5/27/21 | 8:11 AM | COVINGTON | (859) 414-05 | Incoming | Text |
| 5/27/21 | 8:04 AM | COVINGTON | (859) 743-42 | Incoming | Text |
| 5/27/21 | 7:05 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:56 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:52 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:35 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:35 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:34 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:34 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:33 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:33 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:32 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:31 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:31 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:25 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 6:24 AM | COVINGTON | (859) 801-47 | Outgoing | Text |
| 5/27/21 | 6:24 AM | COVINGTON | (859) 801-47 | Incoming | Text |
| 5/27/21 | 4:39 AM | COVINGTON | (859) 801-47 | Incoming | Text |

The date and time for call usage corresponds with the time zone you are in when beginning

Usage for:    8594140309

LOCAL AIRTIME, LONG DISTANCE and INTERNATIONAL CHARGES

Total use:    102 minutes
Total charges      $0.00

| Date | Time | Destination | Number | Minutes | Call Type | Charge |
|------|------|-------------|--------|---------|-----------|--------|
| 5/27/21 | 12:39 PM | to Covington, | (859) 801-47 | 1 Min | T-Mobile to ˉ | $0.00 |
| 5/27/21 | 9:35 AM | Incoming | (859) 360-41 | 7 Min | Call Waiting | $0.00 |
| 5/27/21 | 9:18 AM | to Covington, | (859) 743-42 | 17 Min | -- | $0.00 |
| 5/27/21 | 9:13 AM | Incoming | (859) 801-47 | 5 Min | Call Waiting | $0.00 |
| 5/27/21 | 8:56 AM | to Covington, | (859) 743-42 | 18 Min | -- | $0.00 |
| 5/27/21 | 8:50 AM | Incoming | (859) 916-80 | 5 Min | Call Waiting | $0.00 |
| 5/27/21 | 8:47 AM | Incoming | (859) 743-42 | 3 Min | -- | $0.00 |
| 5/27/21 | 8:40 AM | Incoming | (859) 360-41 | 1 Min | T-Mobile to ˉ | $0.00 |
| 5/27/21 | 8:39 AM | to Akron/OH | (330) 714-68 | 1 Min | -- | $0.00 |
| 5/27/21 | 8:37 AM | Incoming | (859) 916-80 | 2 Min | -- | $0.00 |
| 5/27/21 | 8:25 AM | Incoming | (859) 916-80 | 6 Min | -- | $0.00 |
| 5/27/21 | 7:06 AM | Incoming | (859) 360-41 | 6 Min | T-Mobile to ˉ | $0.00 |
| 5/27/21 | 6:53 AM | Incoming | (859) 801-47 | 2 Min | T-Mobile to ˉ | $0.00 |
| 5/27/21 | 6:43 AM | to Covington, | (859) 743-42 | 1 Min | -- | $0.00 |
| 5/27/21 | 6:39 AM | to Covington, | (859) 801-47 | 4 Min | T-Mobile to ˉ | $0.00 |
| 5/27/21 | 6:33 AM | to Covington, | (859) 292-00 | 6 Min | -- | $0.00 |
| 5/27/21 | 6:09 AM | to Covington, | (859) 292-00 | 13 Min | -- | $0.00 |
| 5/27/21 | 6:02 AM | Incoming | (859) 360-41 | 4 Min | T-Mobile to ˉ | $0.00 |

The date and time for call usage corresponds with the time zone you are in when beginning a

