UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-cr-524 (CKK) |
| : | |
| NICHOLAS JAMES BROCKHOFF, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRETRIAL RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes Defendant Nicholas James Brockhoff's ("Defendant Brockhoff" or "BROCKHOFF") Motion for Pretrial Release, and respectfully urges the Court to deny the motion. The government submits that the Magistrate Judge who found that there was no condition or set of conditions that could reasonably assure the safety of any other person or the community was correct, and Defendant Brockhoff should remain detained pending trial.

**I.     Background**

The gravity of what occurred at the U.S. Capitol on January 6, 2021, cannot be overstated. *United States v. Sabol*, No. 21-cr-35-EGS (D.D.C. April 14, 2021), Memorandum Opinion at 27, citing *United States v. Munchel*, No. 21-3010, 2021 WL 1149196 at 4 (D.C. Cir. March 26, 2021). "This was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *Id*., citing *United States v. Cua*, No. 21-107 (RDM), 2021 WL 918255, at 3 (D.D.C. Mar. 10, 2021).

For his conduct in and around the U.S. Capitol, including the Lower West Terrance,[1] Defendant Brockhoff is charged in a criminal indictment with: Civil Disorder, in violation of Title 18, United States Code, § 231(a)(3); two counts of Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of Title 18, United States Code, § 111(a)(1) and (b); Entering and Remaining in a Restricted Building with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building with a Deadly or Dangerous Weapon, in violation of Title 18, United States Code, § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, § 5104(e)(2)(D); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of Title 40, United States Code, § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, § Title 40, United States Code, § 5104(e)(2)(G). (ECF No. 29.)

BROCKHOFF lives in Covington, Kentucky, and drove himself over 500 miles and eight hours from Kentucky to Washington, D.C. to participate in the events on January 6, 2021. While at the U.S. Capitol on January 6, 2021, BROCKHOFF assaulted multiple law enforcement officers, using a fire extinguisher and wrench; engaged in civil disorder; obtained a law enforcement officer's helmet and wore it throughout the afternoon; entered a Senate conference room of the U.S. Capitol through a broken window; and once inside the building kicked in a door to gain entrance into a different Senate conference room.

---

1 One of the most violent confrontations on January 6, 2021, occurred near an entrance to the U.S. Capitol in the area known as the Lower West Terrace. The rioters physically engaging law enforcement with batons, poles, chemical spray, bottles, and other items. The violence and physical battle for control over the Lower West Terrance entrance in the tunnel and doorway area continued for several hours, during which time rioters repeatedly assaulted, threatened, pushed, and beat law enforcement officers, involving intense hand-to-hand combat. Several officers sustained injuries during this prolonged struggle.

Specifically, while on the west side of the U.S. Capitol, BROCKHOFF twice discharged the contents of fire extinguishers, deadly or dangerous weapons, from an elevated position onto the officers below.  The first assault occurred at approximately 2:33 PM from the Upper West Terrace onto the law enforcement officers on the Lower West Terrace below.



The second assault occurred at approximately 2:40 PM from the scaffolding adjacent to the Lower West Terrace.



Both times, BROCKHOFF discharged the fire extinguishers from elevated positions down onto the law enforcement officers below. This caused law enforcement officers to disperse, which interfered with their ability to conduct crowd control. One of these officers was Metropolitan Police Department ("MPD") Officer A.H., who was engaged in the performance of his/her official duties by assisting the United States Capitol Police.

Also, while on the west side of the U.S. Capitol, the government believes that at approximately 2:32 PM, BROCKHOFF threw a wrench from his position on the West Terrace towards law enforcement officers.[2]



This wrench hit MPD Officer M.D. on the top of the foot/ankle area. As a result, Officer M.D.'s foot/ankle was bruised and swollen, s/he had her/his ankle x-rayed and missed a week of work as a result of the ankle injury.

During the afternoon on January 6, 2021, while very close to the Lower West Terrace tunnel, BROCKHOFF obtained a helmet belonging to MPD Officer J.S. BROCKHOFF wore J.S.'s helmet like a trophy during the afternoon of January 6, 2021. Ultimately BROCKHOFF

---

[2] The wrench-throwing incident was not known at the time of the indictment, and BROCKHOFF is not yet charged with this conduct.

relinquished the helmet when confronted by MPD officers as he climbed out of the U.S. Capitol through a broken window.



Subsequently, BROCKHOFF entered a Senate Conference room of the U.S. Capitol through a broken window, on January 6, 2021.   BROCKHOFF's distinct red shoes are visible as he entered the building.[3]



From inside the U.S. Capitol, BROCKHOFF and others left the room they were in; went into the hallway; and forcibly entered another room ST6M (a Republican Conference Room). Specifically, BROCKHOFF participated in the kicking of the door; pointed and directed another

---

3  These red shoes were found during the search of BROCKHOFF's home.

person to kick "farther to the right;" and once there was an opening on the lower portion of the door, BROCKHOFF reached through that opening to open the door to ST6M from the inside.[4]






From inside one of the conference rooms inside the U.S. Capitol, and while wearing the MPD helmet, BROCKHOFF tore open a box and rifled through the office.[5]

---

4 https://www.youtube.com/watch?v=C4sIl5URW5Q
5 When a search warrant was executed on BROCKHOFF's residence, law enforcement agents found a writing taken from Senate notepad.



Once law enforcement was able to clear rioters from inside the Senate conference room, BROCKHOFF was confronted about wearing an MPD's officer helmet.    When law enforcement asked his name, he responded, "Nick Brockhoff."



On May 27, 2021, law enforcement officers executed a search warrant on BROCKHOFF's home.    During that search, the red shoes BROCKHOFF wore on January 6, 2021, were recovered, as was a writing on a Senate notepad.    During that search, agents learned that BROCKHOFF had left his home three days prior for a three-month motorcycle and camping trip; he was traveling alone to the West Coast; and that it was not uncommon for BROCKHOFF to take road trips by himself.

On May 27, 2021, Hardin County Sheriff's officer located BROCKHOFF adjacent to a motorcycle at the Bruton Branch Recreational Area.[6] The Recreation Area is located in Savannah, Tennessee, within the Western District of Tennessee ("WDTN"). Officers arrested him without incident.

After a detention hearing held on June 3, 2021, WDTN Magistrate Jon A. York detained BROCKHOFF, citing there was no condition or set of conditions that could reasonably assure the safety of any other person or the community. (ECF 25, pages 17-18.)

Defendant Brockhoff now moves this Court to release him. (ECF 32.) The government opposes that motion.

## II. Law and Argument

### A. Applicable statutory authority

The government continues to move for pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (case that involves a crime of violence); and 3142(f)(2)(A) (a case that involves a serious risk that such person will flee).

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force

---

[6] BROCKHOFF provided his location when he was advised law enforcement was conducting a search of his home and had a warrant for his arrest.

8

against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a) and (b) is such an offense, and the statutory maximum for a violation of § 111(b) is 20 years.

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves (A) a serious risk that such person will flee.

### B. Review of a Magistrate Judge's Pretrial Release Order

If a person is ordered detained under § 3142 by a judicial officer, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). As mentioned, a detention hearing was held in the WDTN. Magistrate Judge York found that there was no combination of conditions will assure that the defendant will not pose a danger to the safety of the community. The government asks this Court to uphold that finding.

### C. The factors under 18 U.S.C. § 3142(g) weigh in favor of detention.

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release.

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring BROCKHOFF's detention.

    *i.*    *The Nature and Circumstances of the Offense*

BROCKHOFF's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the U.S. Capitol on January 6, 2021, to obstruct a cornerstone process of our democracy. BROCKHOFF was not just a part of a crowd or someone who got caught up in the moment. Having access to a vehicle and money for fuel, BROCKHOFF traveled 500 miles from Kentucky to Washington, D.C. He twice deployed the contents of fire extinguishers at law enforcement from two different elevated positions on the West Front. BROCKHOFF also threw a wrench, which hit an officer in the ankle causing bruising and swelling. BROCKHOFF went on to obtain an MPD's officer's helmet (from the ground or another rioter), which he wore the remainder of the afternoon. He entered the U.S. Capitol through a broken window. The first room he was in did not satisfy him, so he and others entered another room. The second room was entered by kicking at the exterior of the door until there was a hole large enough for BROCKHOFF to reach his arm through to open the door from the inside. While inside one or both rooms, BROCKHOFF rifled through items, tore open a box, and took a note written on a Senate notepad.

The Chief Judge has outlined specific offense characteristics that serve as guideposts relevant to assessing the comparative culpability of each defendant in relation to the other rioters. *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). Almost all of the *Chrestman* factors put BROCKHOFF in a more serious category and demonstrate his dangerousness.

First, BROCKHOFF has been charged with multiple felonies. Second, BROCKHOFF engaged in some degree of prior planning; he drove over 500 miles from Kentucky to come to the Capitol. When given the opportunity, he attacked officers. Third, BOCKHOFF encouraged others' misconduct when he told another person where to kick on the exterior of the door into ST6M to gain entry, which they did. Fourth, BROCKHOFF demonstrated a dangerous hostility to law enforcement; on two separate occasions he discharged the contents of a fire extinguisher onto law enforcement officers from two separate geographical points on the West Front of the U.S. Capitol. And he threw a wrench at officers, injuring one of them. The only *Chrestman* factor that may weigh in BROCKHOFF's favor is that there is no evidence he coordinated with others. Otherwise, the nature and circumstances of his offenses therefore weigh in favor of detention.

  *ii. The Weight of the Evidence Against the Defendant*

 The weight of the evidence against BROCKHOFF weighs in favor of detention. BROCKHOFF is on open source and body-worn camera spraying a fire extinguisher onto law enforcement officers. The red shoes BROCKHOFF wore on January 6, 2021, were found when his home was searched months later. When confronted by law enforcement outside the broken window on January 6, 2021, BROCKHOFF gave his full name. Collectively, there is strong evidence of BOCKHOFF's guilt and a conviction is highly probable.

  *iii.* *The History and Characteristics of the Defendant*

BROCKHOFF does not have a criminal history.

  *iv.* *The Nature and Seriousness of the Danger to any Person or the Community*

 BROCKHOFF's actions at the U.S. Capitol make him a serious risk of danger to the

community. The D.C. Circuit has drawn a distinction between violent and non-violent participants in the Capitol riots, with the former being in a "different category of dangerousness." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir.), judgment entered, 844 F. App'x 373 (D.C. Cir. 2021) (emphasis added). In fact, the court in *Munchel* specifically named those who assaulted police officers as falling into the category of elevated dangerousness. *Id; see also United States v. Hale-Cusanelli,* 2021 WL 2816245, at *6 (D.D.C. July 7, 2021). (affirming detention order where District Court found Capitol riot defendant's "'conduct in this case made me concerned that he was perhaps looking to act on these violent tendencies and violent comments in the past'"). Other courts in this district have made the same observation. "Indeed, if any crime establishes danger to the community and a disregard for the rule of law, assaulting a riot-gear-clad police officer does." *United States v. Fairlamb*, No. 1:21-CR-120- RCL, 2021 WL 1614821, at *5 (D.D.C. Apr. 26, 2021). Accordingly, BROCKHOFF's release poses a danger to the community and this factor weighs in favor of detention. Based on BROCKHOFF's accessibility to vehicles; money; out-of-state arrest; and proclivity for lengthy, solo road trips, the government asserts he is a flight risk.

### III. Similarly Situated Defendants

As an initial matter, the government understands that the U.S. Court of Appeals for the D.C. Circuit has emphasized the individualized nature of each detention decision. *See United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021); however, the Court may want to consider that many individuals charged with conduct similar or the same as BROCKHOFF remain incarcerated or are released with conditions similar to those in the present case. Recently sentenced defendant Nicolas Languerand, 21-cr-353, remained incarcerated from the

time of arrest in April 2021, for throwing a sick, traffic cone, and canister of pepper spray at officers within the Lower West Terrace tunnel. Defendant Joseph Padilla, 21-cr-214, has remained in custody since his arrest in February 2021, for acting in conjunction with others to use a large sign to push against law enforcement officers and throwing a flagpole type object at officers within the Lower West Terrace tunnel. Defendant Jeffrey Scott Brown, 21-cr-178, has been detained since September 2021, for deploying a pepper spray type irritant at officers in the LWT tunnel at close range.

### IV. Conclusion

Defendant Brockhoff's detention is justified. He is both a flight risk and a danger to the community. The government opposes his release and urges the Court to deny Defendant Brockhoff's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     *Jacqueline Schesnol*
        Jacqueline Schesnol
        Arizona Bar No. 016742
        Capitol Riot Detailee
        Two Renaissance Square
        40 N. Central Ave., Suite 1800
        Phoenix, AZ 85004-4449
        jacqueline.schesnol@usdoj.gov