UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS JAMES BROCKHOFF,<br><br>Defendant | Criminal Action No. 21-0524 (CKK) |

**MEMORANDUM OPINION**
(March 10, 2022)

This criminal case is one of several hundred arising from the insurrection at the United States Capitol on January 6, 2021. For his participation in the events that day, the Government moved for Defendant Nicholas James Brockhoff ("Defendant" or "Brockhoff") to be detained pending trial. Magistrate Judge Jon A. York of the United States District Court for the Western District of Tennessee held a detention hearing and concluded that pretrial detention was warranted.

Pending before the Court is Defendant Brockhoff's [32] Request for Pretrial Release and for Immediate Release with Conditions ("Motion"), in which he asks the Court to revoke the magistrate judge's detention order and place him on pretrial release with conditions. Upon careful consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's Motion.

---

[1] The Court's consideration has focused on:
- Statement of Facts in Support of the Criminal Complaint, ECF No. 1-1 ("Aff.");
- Defendant's Request for Pretrial Release and for Immediate Release with Conditions, ECF No. 32 ("Mot.");
- The Government's Opposition to Defendant's Motion for Pretrial Release, ECF No. 34 ("Opp."); and
- Defendant's Reply to the Government's Opposition, ECF No. 36 ("Repl.").

1

## I. BACKGROUND

Defendant is charged by Indictment with four felony and four misdemeanor counts: (1) two counts of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) one count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. §§ 1752(a)(1)); (3) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (4) one count of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) one count of Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); (6) one count of Act of Physical Violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F); and (7) one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  Indictment, ECF No. 13.

The facts discussed here are based upon the record presently before the Court, including the parties' pleadings and associated exhibits, the photographic evidence presented by the Government, and the [1-1] Statement of Facts in support of the [1] Criminal Complaint.  In an exercise of its discretion, the Court declines to hear additional evidence.  *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." (cleaned up)).  The facts stated here do not represent the Court's findings of fact on the merits of the case, which are the province of the jury.

**A. Defendant's Participation in the Insurrection on January 6, 2021**

On January 6, 2021, a joint session of the United States Congress convened to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  Aff. at 1.  The joint session began at approximately 1:00 p.m., with then-Vice

President Michael R. Pence presiding. *Id.* By 1:30 p.m., the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to resolve an objection raised in the joint session. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.* As the House and Senate proceedings took place, a large crowd of protesters gathered outside the Capitol. *Id.* "[T]emporary and permanent barricades were in place around the exterior of the . . . building, and United States Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside." *Id.*

Shortly after 2:00 p.m., "individuals in the crowd forced entry into the Capitol building, including by breaking windows and by assaulting members of the Capitol Police, as others in the crowd encouraged and assisted those acts." *Id.* These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id.* The riot "desecrated [the Capitol], blood was shed, and several individuals lot their lives." *Trump v. Thompson*, 20 F.4th 10, 19 (D.C. Cir. 2021). All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18-19 (footnote omitted).

The Government's Statement of Facts in support of the Criminal Complaint explain Brockhoff's actions that day. Several images show Brockhoff standing on a landing above law enforcement officers on the west side of the Capitol who were struggling to keep rioters behind police lines. Aff. at 2-4. Brockhoff can be seen wielding a fire extinguisher and spraying its contents onto the officers below him. *Id.* The resulting fog covered the officers, "which caused law enforcement to disperse, and obstructed law enforcement's ability to see." *Id.* at 2. The Government also alleges that Brockhoff threw a wrench at police below him, injuring one of the

officers, although this conduct has not yet been charged by indictment. Opp. at 4. In support thereof, the Government attaches two images of Brockhoff appearing to throw some sort of object, though there is no photographic or video evidence showing clearly the object or the object making contact with an officer below him. *See id.*

After striking the officers, Brockhoff clambered through a broken window and into the Capitol itself. Aff. at 4. Having absconded with a Metropolitan Police Department riot helmet, Defendant forced his way into a conference room with other rioters. *Id.* at 5-6. In one video, Defendant "can be observed directing other individuals on the best method to make entry into the room." *Id.* at 6. Once inside, Defendant "tore open a box[,] rifled through the office," and took Senate stationary. Opp. at 6-7.

### B. Defendant's Arrest and Detention Hearing

On May 27, 2021, law enforcement officers executed a search warrant on Defendant's home. Opp. at 7. Defendant was not there, having left home three days prior for a three-month motorcycle and camping trip. *Id.* Family members alerted Brockhoff that federal law enforcement had a warrant for his arrest, and Defendant voluntarily shared his precise location in Tennessee with law enforcement. *Id.* at 7-8. Citing the nature of the offenses charged, Magistrate Judge York ordered Defendant held without bond, reasoning that there was no set of conditions that could reasonably assure the safety of members in the community and prevent Defendant's flight before trial.

## II.  LEGAL STANDARD

"In times of war or insurrection, when society's interest is at its peak, the Government may detain individuals whom the government believes to be dangerous." *Munchel*, 991 F.3d at 1285 (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 748 (1987)). Nevertheless, "[i]n our

society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). Although the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to *de novo* review. *See United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits). The district court is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Sheffield*, 799 F. Supp. 2d at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)).

The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a crime of violence or a felony that involves the use of a dangerous weapon, § 3142(f)(1), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending

trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also United States v. Salerno*, 481 U.S. at 751 (requiring the government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III.   DISCUSSION

Defendant does not dispute that he is eligible for pretrial detention pursuant to § 3142(f)(1)(A) for having been indicted for a "crime of violence," specifically for assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Count Two). *See United States v. Sabol*, 534 F. Supp. 3d 58, 67-68 (D.D.C. 2021) (EGS) (holding that a defendant charged with a violation of 18 U.S.C. §§ 111(a)(1) and (b) is charged with a crime of violence); *United States v. Klein*, 533 F. Supp. 3d 1, 10 (D.D.C. 2021)

(JDB) ("The D.C. Circuit has not weighed in, but every circuit to address the issue has . . . conclude[d] that § 111(b) does constitute a crime of violence." (internal citations omitted)).[2]

Accordingly, the Court's inquiry is whether any "condition or combination of conditions will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." § 3142(e)(1). With respect to the danger Defendant presents to the community, the Court must "identify an articulable threat posed by [him]," based upon a "factbound inquiry" including the "context" of the charged offenses. *Sabol*, 535 F. Supp. 3d at 69 (citing *Munchel*, 991 F.3d at 1283) (cleaned up). In determining whether Defendant is a danger to the community, the Court considers the 18 U.S.C. § 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing, which neither party requested. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 34 (D.D.C. 2005) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the

---

[2] *See also Munchel*, 991 F.3d at 1281 (concluding that defendants charged under §§ 1752(a)(1) and (a)(2) for offenses involving a "deadly or dangerous weapon" are eligible for pretrial detention under § 3142(f)(1)(E)).

7

"safety of any other person and the community" or flight in advance of trial, § 3142(e)(1). Accordingly, the Court orders that Defendant remain detained pending trial. *See* § 3142(e)(1).

### A. Nature and Circumstances of the Offense Charged

Turning to the § 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including "whether the offense is a crime of violence." § 3142(g)(1).

Despite the "serious and chilling nature" of the events that took place at the U.S. Capitol on January 6, 2021, *Sabol*, 534 F. Supp. 3d at 71, the D.C. Circuit has made clear that detention is not appropriate in all cases involving "Capitol Riot" defendants, *see Munchel*, 991 F.3d at 1284. Rather, the Court must consider the specific offenses with which Defendant is charged and the conduct underlying those offenses. *United States v. Chrestman*, 525 F. Supp. 3d at 25. In so doing, the Court must "adequately demonstrate[ ] that it considered whether [Defendant] pose[s] an articulable threat to the community in view of [his] conduct on January 6, and the particular circumstances of January 6." *Munchel*, 991 F.3d at 1283. "[T]hose who actually assaulted police officers and broke through windows, doors, and barricades . . . are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id.* at 1284.

To aid in this consideration, Chief Judge Beryl A. Howell has articulated six "guideposts" for assessing "the comparative culpability of a given defendant in relation to fellow rioters": (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protesters before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—e.g.,

8

whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *Chrestman*, 525 F. Supp. 3d at 25-28.

As with other courts in this jurisdiction, the Court finds these *Chrestman* guideposts persuasive for the purpose of differentiating among Capitol Riot defendants.[3] Applied to Defendant conduct on January 6, 2021, these "guideposts" weigh modestly, but definitively, in favor of continued pretrial detention.

As to the first *Chrestman* factor, the Indictment charges Defendant with four felony counts and four misdemeanor counts. "Felony charges are by definition more serious than misdemeanor charges; the nature of a felony offense is therefore substantially more likely to weigh in favor of pretrial detention than the nature of a misdemeanor offense." *Chrestman*, 525 F. Supp. 3d at 25. In addition, § 3142(g)(1) specifically directs the Court to consider whether a defendant has been charged with a crime of violence, and at least one of the charged felonies—using a dangerous weapon while assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) and (b), *see* Indictment, Count Two—is a crime of violence. *See Sabol*, 534 F. Supp. 3d at 68; *Whitton*, 534 F. Supp. 3d at 38. This offense carries a penalty of up to 20 years of imprisonment. § 111(b). The gravity of these offenses is undeniable, and weighs in favor of continued pretrial detention.

The second and third *Chrestman* factors—the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear" and whether the defendant used or carried a dangerous weapon—weighs against pretrial detention. It is unclear where the Defendant obtained

---

[3] *See, e.g.*, *United States v. DeGrave*, 539 F. Supp. 3d 184, 201 (D.D.C. 2021) (PLF); *United States v. Whitton*, 534 F. Supp. 3d 32, 38 (D.D.C. 2021) (EGS); *Sabol*, 534 F. Supp. 3d at 72; *Klein*, 533 F. Supp. 3d at 12; *United States v. Pezzola*, 531 F. Supp. 3d 139, 147 (D.D.C. 2021) (TJK).

the fire extinguisher, i.e., whether he brought it with him to the Capitol or whether it was already there. Nor is there any evidence bearing on the wrench's provenance. There is no dispute that he was wearing a police riot helmet while in the Capitol, meaning an officer went without that protective gear.

The Court finds that the sixth *Chrestman* factor, the defendant's "words and movements" during the riot, weighs in favor of pretrial detention, as they demonstrate that he acted "deliberately and dangerously." *Whitton*, 534 F. Supp. 3d at 38. Defendant's use of the fire extinguisher broke law-enforcement lines in places, permitting rioters to break through and further assault the Capitol. Defendant used the fire extinguisher in this way not just once, but twice. Similarly, the Government alleges, Brockhoff threw a wrench at a police officer below him. As such, Brockhoff used violent means to accomplish violent ends. That the means may have been less violent than, for example, bashing an officer with a flagpole,[4] is immaterial. His actions were deliberate, and deliberately aimed at breaking police resistance. These actions show a blatant disrespect for the role of law enforcement and their efforts to maintain the safety of the Capitol and the lawmakers inside. The photographic evidence of his assaults on police officers and other violent behavior weighs in favor of detention.

As to the fourth and fifth *Chrestman* factors, there is evidence that Defendant counseled others on how to access a secure room. Additionally, by breaking through and working to defeat police lines in his use of the fire extinguisher, the evidence offered by the government suggests

---

[4] *See, e.g.*, *United States v. Richardson*, 2022 WL 252034 at *2 (D.D.C. Jan. 27, 2022) (CKK) (affirming detention order where defendant struck officer multiple times with flagpole and where defendant had prior history of criminal conduct); *United States v. Fairlamb*, 535 F. Supp. 3d 30, 33 (D.D.C. 2021) (RCL) (granting government's detention where defendant used discarded police baton to strike officer).

10

that he was a leader in some ways.  It is, however, a limited leadership role.  Accordingly, these factors modestly weigh in favor of detention.

Considering these facts together, the Court concludes that the "nature and circumstances" of the offenses for which Defendant is charged demonstrate a disregard for the law, a willingness to act violently—including against law enforcement officers—and a willingness to coordinate with others to accomplish unlawful and violent ends.  Accordingly, the first factor of 18 U.S.C. § 3142(g) weighs in favor of detention on the basis that no condition or combination of conditions will reasonably assure the safety of the community.  18 U.S.C. §§ 3142(e)(1), 3142(g)(1).  Additionally, in view of "the substantial term of imprisonment" to which Defendant is exposed for his offenses, this factor also weighs in favor of his continued pretrial detention, on the basis that no condition or combination of conditions will reasonably assure Defendant appearance as required.  *Sabol*, 534 F. Supp. 3d at 78 (citing 18 U.S.C. §§ 3142(e)(1), 3142(g)(1)); *see also United States v. Chansley*, 525 F. Supp. 3d 151, 170 (D.D.C. 2021) (RCL).

### B. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention.  § 3142(g)(2).  The images provided by the Government depict Defendant spraying officers with the extinguisher's contents on two occasions, gaining access to the Capitol through a broken window, and forcibly opening a secured door to enter Senate rooms.  *See supra* Section I(A).  Although Defendant denies having thrown a wrench, two images depict Defendant throwing *some* object at police lines.  Because of the severity of Brockhoff's actions—even absent the alleged wrench—the weight of the evidence counsels continued pretrial detention.

### C. History and Characteristics of the Defendant

Under the third section 3142(g) factor, the Court must consider Defendant "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, [the defendant] was on probation, on parole, or on other release." § 3142(g)(3). The Court is concerned that Brockhoff's purported penchant to leave home for months at a time for cross-country road trips may portend a flight risk. That said, Defendant voluntarily assisted law enforcement officers when he learned law enforcement had a warrant for his arrest. Moreover, Defendant has no prior criminal record, and there is no evidence of Defendant taking any violent action other than on January 6, 2021. Accordingly, this factor weighs against continued pretrial detention.

**D. The Nature and Seriousness of the Danger Posed by Defendant's Release**

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." § 3142(g)(4). "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," as it requires the Court to engage in an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at *5 (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, 70 (D.D.C. 2018)). "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Whitton*, 534 F. Supp. 3d at 46 (quoting *Cua*, 2021 WL 918255, at *5).

As the D.C. Circuit recently explained in *Munchel*, the threat that an individual poses to the community must "be considered in context" and "whether a defendant poses a particular threat

12

depends on the nature of the threat identified and the resources and capabilities of the defendant." 991 F.3d at 1283. Accordingly, to the extent the Court's determination of the defendant's dangerousness relies on past political violence, the court must consider whether "the specific circumstances that made it possible" for that violence to arise are likely to manifest themselves again. *Id.* at 1284. This, in turn, requires the Court to consider whether the risk that a defendant poses can be mitigated by supervisory conditions, such as home detention or the presence of a third-party custodian. *See Klein*, 533 F. Supp. 3d at 20.

As discussed above, Defendant's conduct on January 6, 2021 evinces a clear disregard for the safety of others—and for law enforcement officers in particular. *See, e.g.*, *Fairlamb*, 535 F. Supp. 3d at 43 ("[T]he defendant's willingness to assault a police officer on January 6—in the full view of other officers, scores of bystanders, and many cameras—confirms that, when enraged, he poses a danger to the community."). The images show Defendant behind police lines, working to break them with the fire extinguisher. *See Chrestman*, 525 F. Supp. 3d at 27 ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement" because such conduct demonstrates "disregard for the institutions of government and the rule of law[.]").

Consistent with other courts in this jurisdiction, the Court is unpersuaded by any argument that he does not present prospective danger to the community because the precise circumstances of January 6, 2021 may not recur. *See, e.g.*, *Sabol*, 534 F. Supp. 3d at 84 ("While the circumstances of January 6, 2021 were unique, and the day has passed, it cannot be said that every Capitol Riot defendant is no longer a danger because those exact circumstances are unlikely to arise again."). As the court articulated in *Whitton*, "even if the exact circumstances of the January 6 attacks are not 'continuing in nature' or 'likely to be repeated in the future,' the violent offenses [the

defendant] committed that day are serious enough on their own to militate against pretrial release under this first Section 3142(g) factor." 534 F. Supp. 3d at 43. The same is true as to Defendant. *See Munchel*, 991 F.2d at 1284 (observing that Capitol Riot defendants who acted violently are in a different category of dangerousness than those who did not do so).

It is true that Defendant has not previously engaged in acts of violence. Nevertheless, in consideration of § 3142(g), and noting the D.C. Circuit's observation that "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community," *Munchel*, 991 F.3d 1273, the Court is persuaded that this factor weighs slightly in favor of pretrial detention.

## IV. CONCLUSION

On the whole, this is a close case. Still, Brockhoff's use of the fire extinguisher over two occasions to break police lines, forcibly making his way into restricted Senate rooms, and assisting others in accessing restricted spaces, among other factors discussed above, establish, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant were released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **DENIES** Defendant's [32] Motion. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 10, 2022

        /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge