IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-CR-524 (CKK)** |
| | : | |
| v. | : | **18 U.S.C. §§ 111(a)(1) and (b)** |
| | : | **(Assaulting, Resisting, or Impeding** |
| **NICHOLAS JAMES BROCKHOFF,** | : | **Certain Officers Using a Dangerous** |
| | : | **Weapon)** |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Nicholas James Brockhoff (BROCKHOFF), with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election,

Page 1 of 7

which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Nicholas James Brockhoff's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Nicholas James Brockhoff (BROCKHOFF), lives in Covington, Kentucky. On or about January 6, 2021, BROCKHOFF traveled over 500 miles and eight hours from Kentucky to Washington, D.C., via automobile, to protest Congress' certification of the Electoral College.

9.      On January 6, 2021, defendant BROCKHOFF was on restricted grounds, a part of the mob that had gathered on the West side of the U.S. Capitol. At approximately 2:32 PM, BROCKHOFF threw an object from his position on the West Terrace towards law enforcement officers.

10.     While still on restricted grounds, BROCKHOFF assaulted law enforcement officers when he discharged the contents of fire extinguishers, which are deadly or dangerous weapons when used as BROCKHOFF did on January 6, 2021, on multiple occasions and from at least two

different locations. The first assault occurred in two parts, at approximately 2:33 PM BROCKHOFF discharged a fire extinguisher while he was on the Lower West Terrace down onto the West Plaza where law enforcement officers were actively engaged in a struggle with rioters as their lines were being overrun. BROCKHOFF then ran to the Upper West Terrace and continued to discharge the fire extinguisher from an elevated position onto the retreating law enforcement officers who were on the Lower West Terrace below, from which BROCKOFF had just come. The second assault also occurred in two parts. At approximately 2:42 PM and 2:44 PM from the temporary, bleacher-type seating erected for the inauguration above the Lower West Terrace, BROCKHOFF again discharged the contents of a fire extinguisher. These discharges were also from an elevated position down onto several dozen law enforcement officers below. Every time BROCKHOFF discharged a fire extinguisher, he caused law enforcement officers to disperse, which interfered with their ability to conduct crowd control and prevented them from seeing, avoiding, or deflecting projectiles and weapons intended to injure them. One of these officers was Metropolitan Police Department ("MPD") Officer A.H., who was engaged in the performance of his/her official duties by assisting the United States Capitol Police.

11. During the afternoon on January 6, 2021, while very close to the Lower West Terrace tunnel, BROCKHOFF obtained a helmet belonging to MPD Officer J.S. BROCKHOFF wore J.S.'s helmet like a trophy during the afternoon of January 6, 2021.

12. While wearing J.S.'s helmet, BROCKHOFF entered a Senate Conference room of the U.S. Capitol through a broken window, on January 6, 2021. From inside the U.S. Capitol, BROCKHOFF and others left the room they were in; went into the hallway; and forcibly entered another room ST6M (a Republican Conference Room). Specifically, BROCKHOFF participated in the kicking of the door; pointed and directed another person to kick "farther to the right;" and

once there was an opening on the lower portion of the door, BROCKHOFF reached through that opening to open the door to ST6M from the inside.

13. From inside one of the conference rooms inside the U.S. Capitol, and while wearing the MPD helmet, BROCKHOFF tore open a box and riffled through the papers in the office.

14. BROCKHOFF relinquished J.S.'s helmet when confronted by MPD officers as he climbed out of the U.S. Capitol through a broken window. Once out of the Capitol building, law enforcement asked his name, he responded, "'Nick' Brockhoff."

### *Elements of the Offense*

15. Nicholas James Brockhoff knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a)(1) and (b). Specifically, defendant admits that:

- BROCKHOFF forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. Specifically, BROCKHOFF admits that on January 6, 2021, he deployed the contents of fire extinguishers on at least two occasions onto several law enforcement officers of the United States Capitol Police or persons assisting the United States Capitol Police, that is, officers of the MPD, including MPD Officer A.H.

BROCKHOFF further admits that he knew at that time of the assault of, resisting, opposition to, impeding of, intimidation of, or interference with the officer that the officer was engaged in the performance of their official duties or that he/she assaulted, resisted, opposed, impeded, intimidated, or interfered with the officer on account of their performance of their official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: JACQUELINE SCHESNOL
Digitally signed by JACQUELINE SCHESNOL
Date: 2022.04.18 13:22:11 -07'00'

Jacqueline Schesnol
Assistant United States Attorney
Arizona Bar No. 016742

## DEFENDANT'S ACKNOWLEDGMENT

I, Nicholas James Brockhoff, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/20/22

Nicholas James Brockhoff
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/24/22

Alex Reed Stavroh, Sr.
Attorney for Defendant

## U.S. v. Nicholas Brockhoff; 21-cr-524

1. Charged Offenses and Statutory Provisions

Count One:
18 U.S.C. §§ 111(a)(1) and (b)
(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon)
Statutory Provision:
No more than 20 years imprisonment; $250,000 fine; three years' supervised release; and $100 special assessment.

Count Two:
18 U.S.C. § 231(a)(3)
(Civil Disorder)
Statutory Provision:
No more than five years imprisonment; $250,000 fine; three years' supervised release; and $100 special assessment.

Count Three:
18 U.S.C. § 1752(a)(1)
(Entering and Remaining in a Restricted Building or Grounds)
Statutory Provision:
No more than one year imprisonment; $100,000 fine; five years' probation; and $25 special assessment.

Count Four:
18 U.S.C. § 1752(a)(2)
(Disorderly and Disruptive Conduct in a Restricted Building or Grounds)
Statutory Provision:
No more than one year imprisonment; $100,000 fine; five years' probation; and $25 special assessment.

Count Five:
40 U.S.C. § 5104(e)(2)(D)
(Disorderly Conduct in a Capitol Building)
Statutory Provision:
No more than six months' imprisonment; $5,000 fine; five years' probation; and $10 special assessment.

Count Six:
40 U.S.C. § 5104(e)(2)(F)
(Act of Physical Violence in the Capitol Grounds or Buildings
Statutory Provision:
No more than six months' imprisonment; $5,000 fine; five years' probation; and $10 special assessment.

Count Seven:
40 U.S.C. § 5104(e)(2)(G)
(Parading, Demonstrating, or Picketing in a Capitol Building)
Statutory Provision:
No more than six months' imprisonment; $5,000 fine; five years' probation; and $10 special assessment.

2. Charge in Plea and Statutory Provision

Plea to Count One:
18 U.S.C. §§ 111(a)(1) and (b)
(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon)
Statutory Provision:
No more than 20 years imprisonment; $250,000 fine; three years' supervised release; and $100 special assessment.

3. Elements of the Offense
The elements of 18 U.S.C. §§ 111(a)(1) and (b) are:
-The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government, as designated in 18 U.S.C. § 1114, or someone assisting officers of the United States;
-The defendant did so with some use of force;
-The defendant did so voluntarily and intentionally;
-The defendant did so while the officer or employee was engaged in or on account of the performance of official duties;
-The assault involved physical contact with the victim or the intent to commit another felony; and
-The defendant used a dangerous or deadly weapon.

4. Copy of the Plea Agreement
Attached

5. Penalties
No more than 20 years imprisonment; $250,000 fine; three years' supervised release; $100 special assessment; and restitution $2,700.

6. Guideline Calculations

The guidelines for 18 U.S.C. §§ 111(a)(1) and (b) are:

U.S.S.G. § 2A2.2(a) Base Offense Level [14]
U.S.S.G. § 2A2.2(b)(2)(B) Dangerous Weapon [+4]
U.S.S.G. § 2A2.2(b)(7) Convicted under 111(b) [+2]
U.S.S.G. § 3A1.2(a) & (b) Official Victim [+6]
Offense Level 26

U.S.S.G.§3E1.1 [-3]
Final Offense Level 23

Criminal History Category I
Final Guideline Range 46-57 months incarceration